[No. AO10567. First Dist., Div. Two. Feb. 22, 1984.]

SAN FRANCISCO FIRE FIGHTERS, LOCAL 798,
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO et
al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent.

114

COUNSEL

Duane W. Reno and Davis, Cowell & Bowe for Plaintiffs and Appellants.

George Agnost, City Attorney, and Dan Maguire, Deputy City Attorney, for Defendant and Respondent.

OPINION

MILLER, J.—San Francisco Fire Fighters, Local 798, International Association of Fire Fighters, AFL-CIO appeals from the judgment in favor of respondent City and County of San Francisco (City), entered by the San Francisco Superior Court following a court trial. This declaratory relief

action, brought on behalf of six members of Local 798[1] (appellants), was tried without submission of oral testimony, based upon the following uncontroverted facts.

Until November of 1976, the Charter of the City and County of San Francisco (Charter) provided separate, but virtually identical pension plans for City police officers and fire fighters. (§§ 8.559—8.559-13; 8.585—8.585-13.)[2]

On November 2, 1976, the voters of the City passed Proposition L, thereby amending the Charter with regard to pension benefits payable to new City employees, including police officers and fire fighters.[3] The effect of the amendments was to reduce substantially the pension benefits payable to those persons who joined either department on or after November 2, 1976. (§§ 8.586—8.586-14; 8.588—8.588-14.) Proposition L in no way modified the pension plans of those employees of either department who, prior to the passage of Proposition L, participated in their plan pursuant to sections 8.559 through 8.559-13 or 8.585 through 8.585-13.

Thus, the Charter now contains two pension plans for police officers, and two plans for fire fighters, the applicable plan being dependent upon the date an employee joined the department. However, all four plans fall under the umbrella of a single retirement system, the San Francisco City and County Employees' Retirement System (§ 8.500).

Appellants were members of the police department prior to November 2, 1976, and accordingly, were accruing pension benefits pursuant to the earlier police department plan. At a date on or after November 2, 1976, appellants relinquished their employment in the police department and accepted employment as entry level fire fighters. Prior to their move to the fire department, appellants were advised that their retirement pensions would be governed by the later fire fighters' plan.

Appellants brought this action seeking a declaration that, as participants in the earlier police department plan, they have the right to participate in the earlier fire department plan upon their subsequent employment in the

---

[1]The union originally filed this case as a class action. However, the class was never certified and accordingly, this decision concerns only the six named members of the union.

[2]All references to sections or subsections refer to the Charter of the City and County of San Francisco unless otherwise indicated.

[3]Proposition L also added a new pension plan for all new City employees, but those sections have no bearing on the issues in this appeal and accordingly, we will not consider them.

fire department. The trial judge ruled that as fire fighters who joined the department on or after November 2, 1976, appellants were not entitled to receive benefits pursuant to the earlier plan.

### I.

Appellants principally argue on appeal that the pension plan in which they participated as police officers contained an implied promise that should they ever relinquish their employment in that department in order to join the fire department, they could become participants in the fire fighters' plan pursuant to section 8.585 et seq. with no resulting loss of benefits. They reach this conclusion by emphasizing that the earlier police and fire department plans contain identical eligibility requirements and retirement allowance formulas, as well as a provision which explicitly grants credit for service rendered in either the police or the fire department in determining eligibility and in calculating benefits payable under the police department plan. (§ 8.559-10.)[4] The fire department plan contains the same cross-over provision. (§ 8.585-10.)

The practical result of these provisions, as appellants correctly point out, is that prior to Proposition L, police officers could move to the fire department, receive credit for their years of service in the police department and continue to earn retirement benefits calculated by the same formula under which they earned benefits during their tenure as police officers. Appellants derive from this result the assertion that the earlier police department plan created a vested right to participate in the earlier fire fighters' plan, subject to the dual conditions of joining the department and meeting the service requirements. Accordingly, they contend that City deprived them of this vested right by placing them in the lower-earning fire fighters' plan.

It is well settled that a public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment. (*Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863 [148 Cal.Rptr. 158, 582 P.2d 614]; *Miller* v.

---

[4]Identical provisions are also found in the later plans enacted pursuant to Proposition L. (See §§ 8.586-10 and 8.588-10.) The text of section 8.559-10, the earlier police department plan, reads in relevant part as follows: "The following time shall be included in the computation of the service to be credited to a member of the police department for the purposes of determining whether such member qualified for retirement and calculating benefits, excluding, however, any time, the contributions for which were withdrawn by said member upon termination of his service while he was a member under any other charter section, and not redeposited upon reentry into service:

"(1) Time during and for which said member is entitled to receive compensation because of services as a member of the fire or police department."

*State of California* (1977) 18 Cal.3d 808, 815 [135 Cal.Rptr. 386, 557 P.2d 970]; *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852 [179 P.2d 799]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104].) Such a vested pension right may not be destroyed without impairing a contractual obligation of the employing public entity. (*Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 863; *Miller* v. *State of California, supra,* 18 Cal.3d at 815; *Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 855.)

 Neither the law nor the facts are in dispute and thus it is clear that the appropriate resolution of this case turns upon the proper construction of the provisions of the Charter governing the earlier pension plans. Our task is to determine whether, as appellants urge, the section 8.559 police pension plan creates a vested right in its participants to leave the police department in order to join the fire department, and to accrue pension benefits under the formula established in the old fire fighters' plan, regardless when they begin their new careers.

At this point we must disagree with appellants. We conclude that the applicable provisions of the City Charter neither expressly nor implicitly create such a vested right. It follows that appellants have suffered no impairment or destruction of vested rights about which they can complain, and accordingly we affirm the judgment of the trial court.

No court has previously interpreted the specific provisions to which our attention shall turn, and thus we must treat this case as one of first impression.

We turn first to the express language of the Charter. Appellants rely heavily upon section 8.559-10 to support their implied promise/vested right argument. (See footnote 4, *ante,* for the text of section 8.559-10.) However, we agree with City who contends that section 8.559-10 and its corresponding provisions in the fire fighters' plan, merely grant credit for the time served in either department. The time credited pursuant to sections 8.559-10 and 8.585-10 does not, as argued by appellants, amount to "part of the implied contract of employment between the City and all persons who joined either the police department or the fire department prior to November 1, 1976 . . . [promising] that such persons would earn credit toward the retirement benefits *provided under those charter provisions* for all service subsequently rendered in either of those departments." (Italics added.)

Rather, this time credit provision serves two important functions under both plans: First, the years of service in the police department will be in-

cluded, together with the years served in the fire department, in determining whether a fire fighter has served the minimum number of years required to become eligible to participate in the plan. Second, the number of years of service has significance as a factor in calculating the amount of the allowance payable upon retirement. For example, section 8.559-2[5] provides an initial benefit of 55 percent of the member's final compensation, plus an additional 4 percent of that final compensation for each year of service after 25 years, up to a ceiling of 75 percent for those members who have reached age 50 and have earned at least 25 years of service.

We conclude that the express language of section 8.559-10, "[t]he following time shall be included in the computation of the service to be credited to a member of the police department for the purposes of . . . calculating benefits" refers to a provision akin to the section 8.559-2 calculation. It does not, however, guarantee that those years will be credited to the section 8.585 plan, or to any other specific plan.

The title of section 8.559-10, "Computation of Service," tends to support this construction. Were this section intended to create as substantial a vested right as appellants urge us to recognize, it seems likely that the title would reflect its purpose. As written, both the title and the text appear to create nothing more than a vested right in the time served in either department. This right has not been abridged or impaired by placing appellants in the new plan.

However, appellants argue that this provision, together with the fact that the police and fire department plans contain identical eligibility requirements and retirement allowances, give rise to the implied promise upon which they claim a vested right in the earlier fire department plan. That promise, they contend, permits police officers to transfer to the fire depart-

---

[5]Section 8.559-2 provides different formulas for those members with fewer than 25 years and more than 25 years of service. The section reads in relevant part: "Any member of the police department who completes at least twenty-five years of service in the aggregate and attains the age of fifty (50) years, said service to be computed under section 8.559-10, may retire for service at his option. Members shall be retired on the first day of the month next following the attainment by them of the age of sixty-five years. A member retired after meeting the service and age requirements in the two sentences next preceding, shall receive a retirement allowance equal to fifty-five percent of the final compensation of said member, as defined in section 8.559-1, plus an allowance at the rate of four percent of said final compensation for each year of service rendered in excess of twenty-five years; provided, however, that such retirement allowance shall not exceed seventy-five percent of said member's final compensation. A member retired after attaining the age of sixty-five years, but before completing twenty-five years of service in the aggregate computed under section 8.559-10, shall receive a retirement allowance which bears the same ratio to fifty percent of the final compensation of said member, as defined in section 8.559-1, as the service with which he is entitled to be credited bears to twenty-five years."

ment *at any time* and continue to earn the same benefits they earned under their police department plan. We cannot agree that the Charter contains such a promise.

Preliminarily, we observe that the factual predicate upon which appellants rely cannot withstand scrutiny. While it is true that prior to the enactment of Proposition L, a police officer's accumulated years of service could be credited to the section 8.585 plan, a plan with benefits identical to those in the police pension plan, the language of the Charter does not mandate that policemen's and firemen's pension plans remain identical in perpetuity. From a legal standpoint, it is mere coincidence that the earlier two plans are identical.

Conceivably, at some time in the future the City might have reason to modify the fire fighters' plan and yet retain the current level of benefits under the policemen's plan. ■ The cases clearly hold that a municipality may alter the amount, terms and conditions of benefits payable under an existing plan so long as any disadvantage to employers is offset by comparable new advantages. (*Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 864; *Miller* v. *State of California, supra,* 18 Cal.3d at p. 816; *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765].)

■ Under such circumstances, at the time a former police officer accepted employment in the fire department, he or she would no longer be eligible to participate in the police department pension plan. Instead, pursuant to section 8.559-10 of the police pension plan, the accumulated time would convert to the fire department plan then in effect, a plan which, by hypothesis, would not contain identical eligibility requirements and retirement allowances. Thus, the central factual premise upon which appellants find an implied promise in their plan would no longer hold true.

The fact that the current plans contain identical eligibility requirements and retirement allowance formulas and that they permit credit for time served in either department is of no consequence. These factors fail to create an implication that appellants earned a vested right to participate in the current section 8.585 plan while they served the City as police officers. The fallacy in appellants' argument is that the police department and fire department have separate plans, pursuant to different sections of the Charter, and "[f]uture employees do not have a vested right in any particular pension plan." (*Whitmire* v. *City of Eureka* (1972) 29 Cal.App.3d 28, 34 [105 Cal.Rptr. 185].) Upon acceptance of employment, a public employee acquires a vested right to a pension in the plan established for his or her employment classification, and for no other employee plans.

When other Charter provisions are considered, it becomes more certain that the City did not intend to create a vested right in a plan in which a police officer was not a member. We take judicial notice of section 8.559-9, a section to which neither party directed our attention, in support of this view.

Section 8.559-9 provides a mechanism by which a former member of the police department who joins any other office or department, will receive an adjustment to his retirement account "to make the accumulated contributions credited to him at the time of the change, equal to the amount which would have been credited to him if he had been employed in said other office or department at the rate of compensation received by him in the police department and he shall receive credit for service for which said contributions were made, *according to the charter section under which his membership in the retirement system continues.*"

We would foster a strained and unreasonable interpretation by concluding that this provision granted a vested right to participate specifically in the section 8.585 fire fighters' plan. As the language itself clearly states, the service and the contributions attributable to the years served in the police department will be applied to the member's new account in whatever plan he joins upon changing departments.

In the case of police officers who join the fire department after November 1, 1976, the plan established pursuant to Proposition L clearly applies. Section 8.588 opens by stating "[t]hose persons who become members of the fire department . . . on or after November 2, 1976, shall be members of the system subject to the provisions of sections 8.588. . . ." Nothing in section 8.588 or any other section of Proposition L indicates that the drafters of the charter amendments contemplated excluding former police officers from its operation. In this regard the absence of a specific exclusion for former police officers is significant particularly in light of the fact that former police officers do receive some special consideration under the fire department plan. (See, e.g., section 8.588-10, the transfer of years of service provision.)

Because we do not find that appellants had any vested interest in the earlier fire department plan, we need not address their argument that a public entity may not alter a pension plan to the disadvantage of the employees without providing comparable new advantages. However, we note that in any event, City has not altered any pension plan by enacting Proposition L. Rather, the City has established a second, totally distinct plan

which does not affect the pension rights of persons employed in the department before November 2, 1976.

Based upon the foregoing, we hold that the earlier police pension plan neither implicitly nor explicitly creates a vested right to participate in the earlier fire department plan upon joining the latter department. As entry level fire fighters who joined the department after November 1, 1976, appellants are entitled to receive a pension, based upon the years they served and will serve in both the police and fire departments, but their participation in the system is subject to the provisions of section 8.588 et seq.

## II.

We now turn to appellants' argument that the City retroactively reduced their compensation earned as police officers by requiring the transfer of all their accrued time and contributions to the lower paying fire fighters' plan.

It is well established that "[p]ension rights of police officers provided by city charters are considered part of their compensation, serve as incentives toward public service, and vest at the time of their employment." (*Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 748-749 [129 Cal.Rptr. 289, 548 P.2d 689]; see also *Newman* v. *City of Oakland Retirement Board* (1978) 80 Cal.App.3d 450, 458-459 [145 Cal.Rptr. 628].) However, a public employee's vested right to a pension "is subject to conditions and contingencies and the employee is never entitled to more of a pension than that amount which has already matured." (*Tante* v. *Board of Administration* (1979) 93 Cal.App.3d 615, 619 [156 Cal.Rptr. 53].)

Thus, although a public employee obtains an immediate vested right to earn credit toward a retirement pension, each plan provides contingencies which must be fulfilled before the right matures into a right to receive the accrued benefits. In the case of police officers participating in the section 8.559 plan, a member must reach a minimum age of 50 years for those with at least 25 years of service, or age 65 for police officers with less than 25 years of accumulated service. Only upon meeting one of those conditions does a policeman become eligible to receive a retirement allowance. (§ 8.559-2.) The plan implicitly provides that upon the failure to fulfill the conditions set forth, an employee forfeits the vested right to receive a pension under the plan.

This is the situation before us. Appellants presumably knew at the time of their contemplated change in careers that they had not yet fulfilled the

requisite conditions entitling them to receive pension payments. In addition, their police department plan contains an explicit provision for transfer of their accumulated time and contributions upon transfer to another office or department or in the alternative, a refund of their contributions upon leaving City employment. (§ 8.559-9.)

Therefore, appellants cannot successfully challenge the decision to transfer their time and contributions to a plan which ultimately will provide a lower pension. They have not been deprived of compensation. Undeniably, appellants voluntarily left the police department knowing of both section 8.559-9 and Proposition L. City alleges in its answer that, prior to relinquishing their employment in the police department, appellants were advised that their accumulated contributions and years of service would transfer to the new fire fighters' plan. The record does not reflect that appellants refute this allegation. Rather, appellants concede in their opening brief, "all of these men were told that their years of service already completed in the police department and their future years of service in the fire department would be credited toward the substantially lower allowances under the retirement system established for police and fire department employees hired after November 1, 1976." While appellants do not mention the time at which they were so advised, they do not take issue with City's position that they knew the City's position prior to leaving the police department.

We conclude that because appellants still will receive credit for their years of service and for the contributions made to their accounts during their tenure as police officers, they have not been deprived of any portion of their deferred compensation. As discussed above, they do not have a vested right to a specific pension formula. (*Kern* v. *City of Long Beach, supra,* 29 Cal.2d at p. 855; *Frank* v. *Board of Administration* (1976) 56 Cal.App.3d 236, 243 [128 Cal.Rptr. 378].) Upon retirement, appellants will receive a substantial and reasonable pension pursuant to a plan about which they had knowledge prior to leaving their former employment. Therefore, they have no grounds to contest the decision of the City to place them in the fire department plan created for employees of the department hired after November 1, 1976.

The judgment is affirmed.

Kline, P. J., and Smith, J., concurring.