[No. A041794. First Dist., Div. Three. Sept. 27, 1989.]

FRANK PIOMBO, Plaintiff and Respondent, v.
BOARD OF RETIREMENT OF SAN MATEO COUNTY,
Defendant and Appellant.

COUNSEL

Thomas F. Casey III, County Counsel, Lillian Lee Port, Assistant County Counsel, and Thomas David Daly, Deputy County Counsel, for Defendant and Appellant.

Gerard Wagstaffe and Wagstaffe & Wagstaffe for Plaintiff and Respondent.

OPINION

BARRY-DEAL, J.—The Board of Retirement of San Mateo County (the Board) appeals from an order granting a writ of mandate ordering it to permit respondent Frank Piombo to redeposit retirement contributions which he had made while a member of the retirement system of San Mateo County (the County) between 1954 and 1964 and had then withdrawn, and

to reinstate him in the system. Because at this point respondent is statutorily ineligible for redeposit and reinstatement, we must reverse.

## I

Respondent was employed by the County as a deputy district attorney from January 1954 through August 1964, during which time he was a member of the County retirement system until he withdrew his contributions in August 1964. From September 1, 1964, through January 21, 1971, respondent was employed as City Attorney of the City of Millbrae. During this time he was a member of the statewide Public Employees' Retirement System (PERS) until he elected to withdraw his contributions thereto in January 1971. On January 28, 1971, respondent became a judge of the County municipal court and a member of the Judges' Retirement System. Respondent served successively as a judge of the municipal court and of the superior court through the date of this action and the judgment herein; throughout this entire period, he has remained a member of the Judges' Retirement System.

On June 16, 1987, respondent elected to redeposit his withdrawn contributions with PERS, the City of Millbrae's retirement plan. He was reinstated as a member of PERS and credited with 6.650 years of service towards retirement with an employment date of September 1, 1964. On August 6, 1987, respondent made written application to appellant Board for redeposit of contributions he had previously withdrawn from the County retirement system in August 1964 and for reinstatement in the system. Pursuant to written advisement from the Board, respondent tendered the sum of $27,459.19, consisting of the amount previously withdrawn plus interest. On September 10, 1987, at a public hearing, the Board denied respondent's request for reinstatement on the grounds that respondent was "not within the group of former employees eligible to be reinstated in the County Retirement System" because he was not currently in the service of an employer making him a member either of PERS or of a retirement system established under the County Employees Retirement Law of 1937 (Gov. Code, § 31450 et seq. [the 1937 Act]).[1] Respondent petitioned for a writ of mandate directing the Board to set aside its decision and reinstate him upon redeposit of his past contributions. The trial court granted the petition, and the Board now appeals.

## II

The above facts are not in dispute. The sole issue on appeal is the trial court's interpretation of section 31831.1, the applicable statute governing

---

[1] All further statutory references are to the Government Code.

redeposit of retirement contributions and reinstatement of county employees in county retirement systems. That statute provides, in pertinent part, as follows: "Any member who left county or district service on or before December 31, 1971, and became a member of a retirement system established under this chapter in another county or of the Public Employees' Retirement System, who did not elect to, or was not eligible to, leave his [or her] contributions on deposit pursuant to Article 9 (commencing with Section 31700) may now elect to leave his [or her] accumulated contributions on deposit pursuant to Article 9 (commencing with Section 31700) by redepositing in the retirement fund of the county or district he [or she] left the amount of accumulated contributions and interest he [or she] withdrew from such retirement fund plus regular interest thereon from date of separation. [¶] . . . This section shall not apply to members who are retired or who are not in service of an employer making him [or her] a member of a retirement system established under this chapter or of the Public Employees' Retirement System. . . ."

The parties agree that this statute is controlling in this case. Section 31831.1 governs the right of an individual who was once in county service to reenter a county's retirement system after having left that system and becoming a member of a different system. In our opinion, this statute disallows respondent from redepositing his previously withdrawn contributions in the County retirement system and from thereby being reinstated in that system.

The statute was first enacted in 1965 (Stats. 1965, ch. 512, § 1, p. 1833), after respondent had left the service of the County. As amended in 1967 (Stats. 1967, ch. 433, § 1, p. 1646; Stats. 1967, ch. 1383, § 2, pp. 3242-3243), the statute provided individuals who had left county service and withdrawn their retirement contributions with the right to redeposit those contributions, together with interest thereon, in the retirement fund of the county whose service they had left and thereby be reinstated in that system. To be eligible for the benefits of this statute, individuals must originally have been in county service and members of a retirement system under the 1937 Act; they must have left that service within the statutory time frame; and they must have then become members of a reciprocal retirement system either in another county under the 1937 Act or under PERS.

In 1971, the statute was amended to add, among other things, the following language: "This section shall not apply to members who are retired or who *are* not in service of an employer making him [or her] a member of a retirement system established under [the 1937 Act] or of [PERS]." (Stats. 1971, ch. 504, § 3, p. 998, italics added.) Respondent, and the trial court, interpret this amendment to mean that former members of a county

retirement system may redeposit withdrawn contributions and be reinstated *regardless* of their *current* employment at the time of application, as long as they have in the interim redeposited and been reinstated as members of another reciprocal retirement system in which they had been members by virtue of some previous employment.

■ "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose . . .' [citation]; 'a construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].)

■ In our opinion, the plain meaning of the 1971 amendment was to create the additional eligibility requirement that individuals seeking to redeposit and reinstate in a county retirement system must *currently* be "in [the] service of an employer" covered by a reciprocal system; that is, one providing a retirement plan under either the 1937 Act or PERS. Thus, in order to be able to redeposit and reinstate in a county retirement system under section 31831.1, an applicant must be in the service of a reciprocal agency at the time of the application for redeposit and reinstatement.[2]

Respondent's interpretation of the 1971 amendment would render it essentially meaningless. Unless it operates to exclude applicants who are not currently in the service of an employer covered by either a 1937 Act retirement system or PERS *at the time of the application* for redeposit and reinstatement, the sentence would merely restate and repeat the requirement already set forth in the first sentence of the statute that applicants must have entered the service of a reciprocal agency upon leaving the

---

[2] The trial court rejected the Board's interpretation of this sentence in the statute as specifying current or present employment under the required retirement system, stating that "[o]bviously that is not correct. Those are simply contentions. . . . [T]he Court concludes that had the legislature intended such language it clearly could have so stated. It did not do so." It is difficult for us to understand how the word "are" in the 1971 amendment to section 31831.1 can be interpreted as anything other than the present tense of the verb "to be."

county's employ. Such a reading of the 1971 amendment would render it mere surplusage, in violation of the canons of statutory construction. (*Moyer* v. *Workmen's Comp. Appeals Bd., supra,* 10 Cal.3d at p. 230; *F & P Growers Assn.* v. *Agricultural Labor Relations Bd.* (1985) 168 Cal.App.3d 667, 680 [214 Cal.Rptr. 355].)[3]

Citing the statutory definition of the word " '[s]ervice' " given in section 31641 of the 1937 Act, both respondent and the trial court reason that that word as it is used in section 31831.1 must be read to include *previous* service in a reciprocal agency and not just current employment. The statutory language relied on by both respondent and the trial court is as follows: " 'Service' means uninterrupted employment of any person appointed or elected for that period of time: . . . [¶] (d) Allowed for prior service." (§ 31641.) Respondent argues that this provision permits him to use his recent redeposit and reinstatement in PERS to bootstrap himself into the statutory definition of "members who are . . . in service of an employer making him [or her] a member of a [reciprocal] retirement system" for purposes of redeposit and reinstatement in the County's retirement system. According to respondent, the " 'prior service' " which enables him to vault the hurdle erected by the 1971 amendment was his previous employment as Millbrae City Attorney, in conjunction with which he was a member of PERS from September 1964 through January 1971. Because he was a member of PERS during that time period, and in 1987 was reinstated as a member by redeposit of his previously withdrawn contributions, respondent asserts that he "falls directly within the legislative definition" of eligibility for redeposit and reinstatement under section 31831.1. The trial court adopted this argument.

We cannot accept respondent's argument or agree with the trial court. In the first place, this view of section 31831.1 requires considerable linguistic contortions in order to make any sense at all. One must ignore either the word "are" or the phrase "service of an employer," since the only actual status respondent currently possesses which is at all relevant to this case is his *membership* in PERS; he cannot argue that he is now in the service of an *employer* with a reciprocal retirement plan. Respondent's argument simply

---

[3] It would also call into question the specific statutory exclusion of "members who are retired." Obviously, if respondent could now be allowed to rejoin the County's retirement system at the brink of his retirement from the judiciary despite the fact that he is not a member of a reciprocal retirement system, by "piggy-backing" his reinstatement in PERS into eligibility for reinstatement in the County's system, it is hard to understand why retirement should make any difference. Under respondent's construction of the statute, membership in a reciprocal retirement system, not employment status, is all that matters. Yet a person can be retired and still be a member of a retirement system. The Legislature's express exclusion of retired members thus clearly supports an interpretation of the statute limiting its benefits to persons currently *employed* in agencies participating in reciprocal retirement plans.

assumes that section 31831.1 only requires *membership* in a reciprocal retirement system, not current *employment* by a reciprocal agency.[4]

Section 31641, containing the statutory definition of " '[s]ervice,' " begins by defining it as "uninterrupted *employment*." Despite all of respondent's efforts, there is nothing in any of the applicable statutes to support his assertion that *membership* in a retirement system (in this instance, PERS) qualifies as "employment." The failure of respondent's argument is made doubly clear by the use of the word "service" in section 31831.1, which requires that applicants be "in service of an *employer* making him [or her] a member of a [reciprocal] retirement system . . . ." (Italics added.) Under the express terms of the statute, then, it is current *employment* that is required, not merely current membership. The fact that respondent is now a member of PERS again does not put him in the "service" of PERS; more to the point, it does not make him the requisite *employee* of a reciprocal agency.

Respondent's interpretation of section 31831.1 also ignores the context in which the statute is placed. It is found in article 15 of the 1937 Act, entitled "Reciprocal Benefits." The legislative intent of this article is expressly stated in section 31830 as follows: "The provisions of this article are intended to encourage career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems established under this chapter or from a retirement system established under this chapter and [PERS], and to delineate the financial obligations of each system and related political entity *so that no system or political entity shall be liable for more than its just financial obligation.*" (Italics added.) The construction given to section 31831.1 by the trial court would contravene this legislative intent by allowing a member of a retirement system which is not in reciprocity with the county retirement systems established under the 1937 Act to enjoy the benefits of reciprocity. Although the Judges' Retirement System is in reciprocity with PERS, it is *not* in reciprocity with the County's retirement system. The trial court's decision in this case would upset the careful legislative balance established by the 1937 Act and obviously intended by the Legislature.

Moreover, the construction of section 31831.1 urged by respondent and adopted by the trial court is in conflict with the statutory definition of the

---

[4] Respondent's arguments in his brief on appeal well illustrate the inherent difficulty he has trying to fit square linguistic pegs in round statutory holes, as seen from the following passage: "Respondent is then, by code definition, in the 'service' of PERS, as a conceded *member* of PERS. His 'uninterrupted employment' cannot mean *current* employment, but uninterrupted past employment 'allowed for prior service.' He is now a *member* of PERS . . . and falls directly within the legislative definition . . . ." (Original italics.) Respondent cites no authority for his equation of "membership" in a retirement system with "employment" by a government agency.

phrase " 'prior service.' " This phrase, on which both respondent and the trial court place their entire reliance, is defined by section 31643 as follows: "Unless otherwise provided in the regulations of the board, 'prior service' means service prior to the date of entry of a member into the retirement system." By this definition, the term " 'prior service,' " as used in section 31641, subdivision (d), cannot refer either to respondent's membership in PERS or his employment by the City of Millbrae, because they did not occur "prior to the date of [respondent's] entry . . . into the retirement system"; to the contrary, they occurred *after* that entry, which took place in 1954. For the same reason, respondent cannot argue that the " 'prior service' " was his previous employment by the County from 1954 through August 1964. In short, " 'prior service' " does *not* include respondent's previous membership in PERS in this case.

## III

Respondent urges that even if the 1971 amendment to section 31831.1 would bar his redeposit and reinstatement in the County system, he had a *vested right* to redeposit because of his membership in PERS during the time he was employed by the City of Millbrae and before the amendment of the statute in 1971.

When respondent left the County's employ in 1964, he elected to withdraw his contributions from the County's retirement system pursuant to section 31628, rather than leave them and stay in the retirement system pursuant to section 31700. His action in withdrawing his funds essentially meant that he was terminating his membership in the retirement system and waiving his rights to participate therein; the option of redepositing his contributions at a later date and being reinstated was simply not available to him at that time. In 1965, the Legislature enacted section 31831.1, permitting redeposit and reinstatement in a county retirement system for former members who had become members in other reciprocal retirement systems. PERS was included as a reciprocal retirement system by amendment in 1967. Respondent, at that point a member of PERS, thus became eligible to rejoin the County's retirement system by tendering for redeposit his withdrawn contributions, plus interest. He did not, however, choose to apply for redeposit and reinstatement in the County's retirement system. Later in 1971, when section 31831.1 was amended to include the language at issue in this case, respondent was a member of a different retirement system not in reciprocity with the County's retirement system, and no longer a member of PERS.

Respondent asserts that because he *could have* been reinstated in the County's retirement system between 1967 and 1971, during most of which

time period he was a member of PERS, his right to reinstate was "vested" and cannot now be eliminated or denied. The trial court agreed, finding that the Board's interpretation of section 31831.1 "is a complete elimination of a right to [a] pension and is not merely a modification as to amount, terms and conditions." We disagree.

■ Governmental pension systems "must be flexible and capable of change to meet new conditions, and it would be disastrous if the right, both as to amount and conditions, became irrevocably fixed as to any employee upon entering the employment. The courts have accordingly held that the vested right is to a *substantial and reasonable pension,* which the governing body may not repeal, but may modify as to amount, terms and conditions." (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 1079, p. 650, original italics.) The right to a pension is *contractual.* "[A]n employee may acquire a vested contractual right to a pension but . . . this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he [or she] serves. The statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. . . . There is no inconsistency therefore in holding that he [or she] has a vested right to a pension but that the amount, terms and conditions of the benefits may be altered." (*Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799].)

■ Here, respondent's contractual right to a County pension vested and became quantifiable at the end of his term of employment, that is, when his contract of employment with the County was terminated. The fact that the Legislature subsequently gave him a new option to redeposit his contributions and reinstate his pension rights, and then limited that option before he elected to exercise it, did not deprive respondent of any "vested rights." Respondent simply did not have a "right" to a County pension at the time that the Legislature enacted the 1971 amendment. He had already voluntarily waived or given up his right to that pension when, pursuant to section 31628, he elected to withdraw his retirement contributions upon his resignation from County service in 1964, at a time when there was no right whatsoever to redeposit. When he terminated his County employment, respondent clearly had *no expectation* that if he withdrew his retirement contributions he would later be allowed to change his mind and redeposit them just before retirement, thereby becoming entitled to a pension he had previously given up. When the Legislature subsequently enacted section 31831.1 and respondent thereafter obtained the option of redepositing his contributions in order to reinstate his membership in the County retirement system, he did not choose to exercise it. The Legislature's later 1971 amendment of the statute did not take away respondent's right to a pension; it simply took away an option to reinstate that right.

In any case, to the extent respondent had a "right" to redeposit and thereby reinstate his pension rights, that right was statutory in nature and depended on the terms of the statute. Statutory rights regarding the terms and conditions of employment are subject to modification by the Legislature or proper statutory authority. (*Hinchliffe* v. *City of San Diego* (1985) 165 Cal.App.3d 722, 725 [211 Cal.Rptr. 560].) The Legislature's exercise of its power to change the statutory terms and conditions on respondent's right to redeposit was unfettered by any contractual obligations. The fact that it defeated his expectation of having an option to reinstate pension rights he had previously voluntarily waived did not result in any impairment of his vested rights. (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813-818 [135 Cal.Rptr. 386, 557 P.2d 970].) In short, respondent had no vested right to reinstate a contractual right he had previously given up.

The judgment granting the writ of mandate is reversed, and the writ issued is hereby discharged. Respondent shall pay appellant Board's costs on appeal.

White, P. J., and Strankman, J., concurred.