Filed 3/1/18; Certified for Publication 3/29/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THOMAS P. GUARINO, | C076629 |
| Plaintiff and Appellant, | (Super. Ct. No. SCCVCV1301013) |
| v. | |
| COUNTY OF SISKIYOU et al., | |
| Defendants and Respondents. | |

Appellant Thomas P. Guarino (Guarino) appeals from an order of the superior court granting an "anti-SLAPP" (Strategic Lawsuits Against Public Participation) motion to strike his First Amended Complaint pursuant to Code of Civil Procedure section 425.16, undesignated section references are to the Code of Civil Procedure. The motion was filed by defendants County of Siskiyou (County), individual members of the Board of Supervisors Marcia Armstrong, Grace Bennett, Michael Kobseff, Ed Valenzuela, and

1

Jim Cook (the Board), as well as County Administrator, Tom Odom (collectively, defendants). Guarino also appeals the trial court's order sustaining demurrers without leave to amend that were filed on behalf of the County, the Board, and Odom.

Because we affirm the order granting the Code of Civil Procedure section 425.16 motion, we need not decide whether the trial court erred in sustaining defendants' demurrers.

## FACTS AND PROCEEDINGS

A.    The Allegations of the Complaint

Guarino's complaint alleges the following:

Guarino was appointed as Siskiyou County's County Counsel for a term of four years, beginning November 2, 2008.

The County began an investigation into Guarino's actions in 2011 in response to a complaint by Guarino's subordinate, Paula Baca. The County retained an outside law firm (Cota Cole LLP) to conduct the investigation, the legality of which was questioned by Guarino. This law firm also investigated Guarino's claim that Baca had violated her duty of loyalty to the County Counsel's office.

The investigation into Baca's activities resulted in a written report in November 2011 "which entirely exonerated [Guarino] and informed him that it was provided '**for the purpose of closing the above-referenced matter. Nothing in the investigation may or will be used for any disciplinary purpose and therefore, the investigation report, as indicated, will remain a confidential document**.' " (Original emphasis.)

In December 2011, Guarino was appointed to a second term as county counsel to commence in November 2012. At the time of his reappointment he accepted concessions to his salary and healthcare benefits to go into effect for the remainder of his first term.

2

In February 2012, Baca resigned and filed a government tort claim claiming constructive termination. Thereafter, in March 2012, Guarino became a party to a joint representation agreement with Cota Cole LLP.

Baca filed a lawsuit in federal court on August 6, 2012, naming the Board, County Administrators, David Prentice of Cota Cole LLP, and various individuals, including Guarino. The next day, the County Clerk issued Guarino a certificate of appointment for his second term and administered the oath of office.

Guarino further alleges the Board met illegally in closed session on August 16, 2012, to conduct an employment review of him, and, as a result, issued a letter "ordering [Guarino] . . . to vacate the premises" as well as authorizing him "to retain counsel to represent him in the Baca matter at the County's expense." This action violated Government Code section 27641 because he was being removed as County Counsel without a section 27641 evidentiary hearing.

A subsequent investigation followed, which resulted in a September 7, 2012, report that also exonerated Guarino, while at the same time recommending the privatization of the County Counsel's Office.

Guarino's efforts to obtain counsel to represent him in the Baca matter were thwarted because the County refused to execute the fee agreement with his chosen counsel, John Lawrence, beginning as early as August 17, 2012, and continuing up until the time of his resignation.

On September 17, Prentice wrote Lawrence, suggesting Guarino should resign because of a conflict of interest. On September 18, 2012, the Board voted illegally to rescind Guarino's appointment to a second term. The next day Prentice e-mailed Lawrence to request a meeting on October 3. On October 3, Prentice asked Guarino to resign.

On October 4, Lawrence e-mailed Prentice complaining that he still did not have an executed fee agreement to represent Guarino in the Baca matter. Prentice and

3

California State Association of Counties insurance adjuster Mark Stone "made it clear by their actions and conversations that no contract for [Guarino's] defense attorney would be provided until he resigned. Attorney Prentice indicated he was working at the Board's direction in refusing to allow Lawrence to be formally retained [as Guarino's counsel] until [Guarino] resigned."

On October 19, 2012, County Administrative Officer Tom Odom filed a 10 count accusation against Guarino with the County Clerk pursuant to Government Code section 27641.

We note at this point that section 27641 of the Government Code provides in relevant part:

"The county counsel shall serve for four years from the time of his appointment and until his successor is appointed, subject to the following: [¶] . . . [¶]

"(b) He may be removed at any time by the board of supervisors for neglect of duty, malfeasance or misconduct in office, or other good cause shown, upon written accusation to be filed with the board of supervisors, by a person not a member of the board, and heard by the board and sustained by a three-fifths vote of the board. When an accusation has been so filed with the board, the board may direct the district attorney to investigate and present the accusation or may employ private counsel for that purpose. All testimony before the board shall be under oath or affirmation administered by the board. The board is hereby vested with the power to compel the attendance of witnesses and the production of books, papers and testimony and shall make such processes available to the accused. A copy of the accusation shall be personally served upon the accused and he shall be given not less than 10 days' time in which to file a written answer to the accusation. If, after hearing, it appears to the satisfaction of the board that the accusation has been substantiated, the board shall so notify the accused by mail. Such notice shall specifically state the findings and judgment of the board, and the board shall

4

thereupon forthwith remove the accused from office and shall immediately appoint his successor."

Guarino's complaint went on to allege:

Odom's accusation was based upon conduct previously investigated and for which Guarino had been told there would be "no disciplinary action" and "that the investigation was not for the purpose of removal from office."

The Board took this action in order to force Guarino's resignation because the accusation would cover many of the same issues as the Baca litigation for which he was still unrepresented. Having an actual hearing on the information would have been futile because "the decision had already been made to remove [Guarino] by at least as early as September 11, 2012, and is further demonstrated by the Board's action of September 18, 2012, in illegally rescinding [Guarino's] appointment to a second term."

Odom's accusation was set for hearing on November 13, 2012, with Guarino's response being due on November 2. Guarino "filed an answer" to the accusation on November 2 with the County Clerk and requested a continuance to February 4, 2013, to retain counsel. Guarino resigned the same day due to intolerable working conditions intentionally created by each named defendant. Thereafter, Lawrence was retained to represent Guarino. In January 2013, Guarino filed a timely Government Tort Claim.

B.     The Anti-SLAPP Motion

In pertinent part, the County, the Board, and Odom moved collectively to strike the entirety of Guarino's complaint against them on the basis that it was "filed primarily to chill Defendants' valid exercise of their Constitutional rights of freedom of speech in connection with statements made during and . . . connected to official proceedings authorized by law and in connection with [a] public interest." Defendants argued the court should look at the "allegedly wrongful and injury-producing conduct that provides the foundation for the claim to determine whether section 415.16 applies" (citing *Hylton*

5

*v. Frank E. Rogozienski, Inc*. (2009) 177 Cal.App.4th 1264, 1272; emphasis omitted) and that the complained of conduct implicated all four classes of protected speech recognized by section 425.16 subdivision (e), which they identified as:

> "● written or oral statements made before a judicial proceeding authorized by law. (subd. (e)(1));
> "● written or oral statements made in connection with an issue under consideration by an official proceeding authorized by law, (subd. (e)(2));
> "● written or oral statements made in a public forum in connection with an issue of public interest, (subd. (e)(3)); or
> "● any other conduct in furtherance of the constitutional right of free speech in connection with a public issue, (subd. (e)(4)). (Code Civ. Proc., § 425.16, subd. (e).)"

Defendants argued that the complained of conduct set forth in Guarino's complaint was protected by the litigation privilege found in Civil Code section 47(b), and thus were entitled to the benefits of section 425.16. (Citing, e.g., *Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106; *Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452, 478 [investigatory activities entitled to Civil Code section 47(b) protection]; *Frisk v. Merrihew* (1974) 42 Cal.App.3d 319, 324 [board meetings as official proceedings authorized by law entitled to protection].) Regarding the merits, defendants argued in pertinent part that Guarino could not show a probability of prevailing because there was no contract and their actions were entitled to immunity.

In support of their motion, the defendants requested judicial notice of certain materials, including the County's February 20, 2013, response to Guarino's government tort claim, which stated that Guarino's complaints were in response to actions taken in an investigation of personnel matters and that Guarino was segregated "in order to maintain the integrity of the investigation." These materials also showed that the Baca suit was

6

settled in March 2013. They further included findings of fact by an administrative law judge who rejected Guarino's claim he had been constructively discharged and had no alternative but to resign. The administrative law judge did not believe Guarino's testimony noting "the articulated reasons [for his constructive discharge claim] are contradictory and inherently improbable."

Defendants also submitted by way of declaration copies of the August 16, 2012, letter placing Guarino on paid administrative leave, the notice of accusation setting the hearing and responsive deadlines, the October 19, 2012, accusation, and the November 6, 2012, letter accepting Guarino's resignation and taking the accusation hearing off calendar.

In response, Guarino made multiple arguments, including an argument that defendants had not shown their action arose from protected activity, relying heavily on *McConnell v. Innovative Artists Talent and Literary Agency, Inc.* (2009) 175 Cal.App.4th 169 (*McConnell*). He also argued their actions were illegal and premised on a fundamental misunderstanding of the County's powers relative to County Counsel.

In reply, defendants argued that they satisfied the first prong of the anti-SLAPP analysis because the personnel investigation was not illegal, the accusation was not deficient and was mooted by Guarino's resignation, and the complained of conduct also fell within section 425.16 subdivision (e)(4) regardless of the status of the investigations. On the merits, they argued that Guarino could not establish a contract, the rescission of appointment was legally permissible, and they were immune from liability. Defendants also submitted objections to evidence offered by Guarino in opposition to the Anti-SLAPP motion.

The superior court held a hearing on the Anti-SLAPP motion and demurrers on May 21, 2014, wherein it received argument on both motions. The trial judge stated on the record that he had carefully reviewed the papers associated with the motions and invited the parties to address any "high points" the parties wished to make. After hearing

7

argument and the submission of the matter by the parties, the court signed a previously prepared order, finding that the arguments of the parties had not changed the court's original analysis of the merits of the motions. The court further ruled on defendants' evidentiary objections even though it expressly found that "if I had allowed everything in, it wouldn't change my decision."

In its order on the motions, the court granted all requests for judicial notice and granted the anti-SLAPP motions "as to all defendants and all causes of action." It also granted the demurrers without leave to amend on the basis that Guarino had failed to state facts sufficient to constitute a cause of action and for uncertainty. In so doing, it recognized the anti-SLAPP order mooted the demurrers, but reached the issue because of the possibility of appellate review of the anti-SLAPP ruling.

Guarino filed a notice of appeal from the order granting the County's anti-SLAPP motion and sustaining the demurrers without leave to amend. Because we do not reach the ruling on the demurrers, we need not decide whether, in the interests of justice, we should deem the order sustaining the demurrers -which is not appealable - as incorporating a judgment of dismissal. (See *Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1101, fn. 3.)

DISCUSSION

I

*The Anti-SLAPP Motion*

A.   The Causes of Action At Issue on This Appeal

Guarino's First Amended Complaint sets forth 19 causes of action. On appeal he challenges the trial court's ruling only on the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and Twelfth causes of action. Thus, for purposes of appeal, he has abandoned any challenge to the court's ruling on the Second, Seventh, Eleventh, and the

8

Thirteenth through Nineteenth causes of action. We need address those causes of action no further.

Regarding the Third, Fifth, Sixth, Eighth, Ninth, Tenth and Twelfth causes of action, Guarino, citing the "primary difficulty in addressing each cause of action" other than those addressed in his opening brief, and this court's *de novo* review, incorporates the points and authorities he presented on these motions to the trial court. An "appellant may not simply incorporate by reference arguments made in papers filed in the trial court, rather than briefing them on appeal. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334.)" (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) The challenges to these causes of action are forfeited.

There remain then, Guarino's arguments relating to the First and Fourth causes of action.

### B. General Principles

Section 425.16 provides a mechanism to combat "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.15, subd. (a).) "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"[W]e evaluate an anti-SLAPP motion using a two-step process. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) Under the first step, the defendant must show [Guarino's] cause of action arose from the defendant's protected activity. If defendant satisfies the first step, we take the second step, which is to determine whether the plaintiff

9

has made a prima facie showing of success on the merits. (*Id*. at pp. 88–89.)" (*Baughn v. Department of Forestry & Fire Protection* (2016) 246 Cal.App.4th 328, 334.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

While Guarino correctly notes that we review the trial court's grant of the anti-SLAPP motion de novo, this does not relieve him of his duty to present reasoned argument in support of his claim that the anti-SLAPP motion should not have been granted. (See *Soukup*, 39 Cal.4th at p. 294, fn. 20; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; Cal. Rules of Court, rule 8.204(a)(1)(B)-(C).)

C.      The <u>First</u> <u>Cause</u> <u>of</u> <u>Action</u>

Guarino's First Cause of Action is styled "Breach of Employment Contract" and it alleges that defendants breached "an employment contract" (that "contract," according to Guarino, is the appointment letter he received from the County) by preventing him "from performing his duties."

The "Appointment Agreement" to which his complaint refers is set forth in Exhibit A to Guarino's complaint. It is a letter from the Siskiyou County Administrator congratulating him on his appointment as County Counsel outlining the terms of employment and other benefits of the position.

As to this cause of action, Guarino argues only that defendants did not show that the activities about which Guarino complains arose from protected activity. His argument is unpersuasive.

The anti-SLAPP statute identifies four different categories of protected conduct falling within an " 'act in furtherance of a person's right of petition or free speech[.]' " (§ 425.16, subd. (e).)

To arise from protected conduct, the County's actions underlying Guarino's claims must themselves "have been an act in furtherance of the right of petition or free speech." (See *Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 610 [citing *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78].) The County's actions may be in furtherance of the right to petition even if the right does not belong to the County. (See *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1399 (*Vergos*) [actions taken by university manager to investigate and decide claim of sexual harassment brought by university employee were privileged conduct under anti-SLAPP statute].) While County actions that are illegal as a matter of law may not support application of the anti-SLAPP statute, mere allegations of illegality do not prevent its application. (See *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424 [factual and legal disputes inappropriate for resolution in phase 1]; *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1545 (*Hansen*).)

In 2011 and 2012, the County received complaints from Guarino's subordinate Baca that he had created a hostile workplace environment and had been harassing her. The County investigated these claims over Guarino's objections to that investigation. Baca ultimately filed a lawsuit concerning these claims in August 2012 naming, among others, the County and Guarino, which lawsuit was not settled until March 2013. It appears that Guarino's hostile conduct may not have been limited to Baca, but may also have included other subordinates and staff.

11

The County had a legal duty to investigate complaints of Guarino's misconduct and take remedial action to prevent further harassment. (See Gov. Code, § 12940, subds. (j)(1) [requiring the employer "take all reasonable steps to prevent harassment from occurring" and must take "immediate and appropriate corrective action"], (k) [unlawful for employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring"].)

We reject Guarino's argument that the removal procedure found in Government Code section 27641 precludes the County from investigating claims of his wrongdoing through something less than a formal accusation under that statute. Guarino offers no authority for that argument and, indeed, pursuant to Government Code section 25303, a county has an obligation to supervise county officers and is invested with the authority to investigate alleged improprieties. (See *Steiner v. Darby* (1948) 88 Cal.App.2d 481, 494.)

The internal investigation into wrongdoing by Guarino, which ultimately led to the filing of an accusation against him pursuant to Government Code section 27641 was an official proceeding authorized by law and thus any statements made before or in connection with that investigation arose from protected activity. (See, e.g., *Hansen, supra,* 171 Cal.App.4th at p. 1544; *Vergos*, *supra*, 146 Cal.App.4th at p. 1399; Code Civ. Proc., § 425.16, subd. (e)(1)-(2).)

As noted, Guarino relies in large part on the court's holding in *McConnell*. We disagree that *McConnell* prevents anti-SLAPP treatment here as that case is factually distinguishable. The *McConnell* court refused to apply the anti-SLAPP statute to claims that arose out of the temporary modification of job duties done in an effort to keep clients and not focused on establishing the validity of claims pending in a lawsuit between the parties. (*McConnell*, *supra*, 175 Cal.App.4th at pp. 177-178.) Notably, the *McConnell* letter modifying job duties failed to mention the lawsuit, any need to investigate, any alleged misconduct by the people whose job duties were being modified, or other mention of potential claims or resolution. (*Id*. at p. 178.) Here, in contrast, the actions

12

complained of are inseparable from the complaints regarding Guarino's conduct as County Counsel, the County's investigation into that conduct, and the defense of the Baca action complaining of that conduct. (See, e.g., *Gallanis-Politis v. Medina*, *supra*, 152 Cal.App.4th at p. 612 [striking retaliation claim based upon investigation and report made at request of counsel in response to litigation discovery requests]; *Hansen, supra,* 171 Cal.App.4th at p. 1544 [internal investigation by state government law enforcement agency is an official proceeding authorized by law]; *Vergos*, *supra*, 146 Cal.App.4th at p. 1399.)

Further, Guarino's attempt to impose liability on Board members for their votes related to this investigation and Odom's involvement with those proceedings also fail because individual actions happening in the course of protected activity under section 425.16 subdivision (e)(1) (board members' votes) as well as in connection with an issue under consideration by the board under section 425.16 subdivision (e)(2) are entitled to protection. (See *City of Montebello v. Vasquez, supra*, 1 Cal.5th at pp. 422-423, 425-427.)

Thus, we hold that defendants' actions that are the centerpiece of Guarino's lawsuit arose from defendants' protected activities within the meaning of section 425.16.

As noted earlier, once the court concludes that a plaintiff's action against defendants arises from protected activity, a plaintiff then must show that there is a probability that plaintiff will prevail on the merits of plaintiff's claim. On this issue, Guarino argues in this court only that the trial court erred in dismissing his First Cause of Action for Breach of Contract because he had an employment contract with the county. For the reasons set forth, *post*, we reject that claim, too.

Guarino's challenge to the trial court's ruling on the First Cause of Action fails.

D.      The Fourth Cause of Action

In the Fourth Cause of Action, Guarino alleges a "Breach of Employment Contract for Constructive Discharge" pleading that the defendants breached his "employment contract," again, the appointment letter attached as an exhibit to his complaint, by subjecting him to a constructive discharge.

As noted, once the County made the threshold showing that Guarino's causes of action arose from protected conduct, the burden shifted to Guarino to show a probability of prevailing on the merits at trial. (*Navellier v. Sletten, supra*, 29 Cal.4th at p. 88.) This required Guarino to show his complaint for breach of contract was legally sufficient and "supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) In determining whether Guarino has met this burden, the court will "not weigh the credibility or comparative probative strength of [the] competing evidence" and will sustain the granting of the anti-SLAPP only if the County's evidence defeats Guarino's claim as a matter of law. (*Ibid.*; italics omitted.)

To establish a breach of contract, plaintiff must plead and provide admissible evidence showing: (1) that plaintiff and the County entered into a contract; (2) that plaintiff did everything the contract required him to do; (3) that the County had certain obligations under the contract; (4) that the County failed to do what the contract required; (5) that plaintiff was harmed; and (6) that the County's breach of that contract was a substantial factor in causing that harm. (CACI No. 300.)

Guarino's breach of contract claim does not survive the first required element of his cause of action.

Guarino was an officer of the County, whose appointment was authorized by the California Constitution and Government Code. (See *Ogle v. Eckel* (1942) 49 Cal.App.2d 599, 602 [county counsel is county officer]; Cal. Const. Art. XI, § 1(b) ["The Legislature

14

or the governing body may provide for other officers whose compensation shall be prescribed by the governing body"]; Cal. Const. Art. XI, § 4(c) & (e) [County charter to provide for "other officers, their election or appointment, compensation, terms and removal" as well as the "powers and duties of . . . all other county officers . . . and for the manner of filling all vacancies occurring therein"]; Gov. Code, § 27640 [authorizing appointment of county counsel by the board]; Gov. Code, § 27641 [setting term of appointment at four years and creating methodology for removal from office].)

" . . . [I]t is well settled in California that public employment is not held by contract but by statute  . . . .  Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that '[t]he terms and conditions of civil service employment are fixed by statute and not by contract.'  [Citations.]  Indeed, '[the] statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.' "  (*Miller v. State of California* (1977) 18 Cal.3d 808, 813-814; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1690; see, *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1432.)

"The public employee, thus, can have no vested contractual right in the terms of his or her employment, such terms being subject to change by the proper statutory authority."  (*Hinchliffe v. City of San Diego* (1985) 165 Cal.App.3d 722, 725.)

This well-settled law is the rock upon which Guarino's breach of contract claim founders.  He cannot show that he had a probability of prevailing on his breach of contract claim when, on this record, we cannot identify a contract with the county.

We recognize that the " 'often quoted language that public employment is not held by contract' has limited force where, . . . the parties are legally authorized to enter (and have in fact entered) into bilateral contracts to govern the employment relationship. [Citations.]" *(Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1182.)  But Guarino makes no showing of such a contract here,

relying solely for his claims on his appointment letter as the County Counsel which is insufficient to support contract claims. (See *Coyne v. Rennie* (1893) 97 Cal. 590, 593 ["mere appointment or election of a municipal officer [here, chief of police,] for a specified time and salary creates no contractual relation"]; *Humbert v. Castro Valley County Fire Protection Dist.* (1963) 214 Cal.App.2d 1, 13 [fire captain as public officer unable to maintain action for breach of contract].)

Guarino's employment being afforded by statute and/or ordinance only, his contract claim must necessarily fail.

## II

### *The Demurrers*

Having concluded that the trial court did not err in granting defendants' motion brought pursuant to section 425.16, we need not decide whether the trial court erred in sustaining defendants' demurrer to the complaint.

### DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278, subd. (a)(2).)

                                             HULL     , J.


We concur:


     BLEASE     , Acting P. J.


     RENNER     , J.

Filed 3/29/18

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THOMAS P. GUARINO, | C076629 |
| Plaintiff and Appellant, | (Super. Ct. No. SCCVCV1301013) |
| v. | |
| COUNTY OF SISKIYOU et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Siskiyou County. Leslie C. Nichols, J. Affirmed.

William M. Duncan, P.C., William M. Duncan for Plaintiff and Appellant.

Spinelli, Donald and Nott, Domenic D. Spinelli, Amanda Uhrhammer, and Conor H. McElroy for Defendants and Respondents.

1

THE COURT:

The opinion in the above-entitled matter filed on March 1, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


        BLEASE        , Acting P. J.


        HULL           , J.


        RENNER        , J.